FILED
 2021 Sep-15  PM 02:11
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| KIMBERLY L. BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 7:20-cv-682-GMB ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

On April 17, 2017, Plaintiff Kimberly L. Brown filed an application for disability insurance benefits ("DIB"). Her alleged disability onset date is March 1, 2017.[2] Brown's application for benefits was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on November 20, 2018 and denied Brown's claims on February 20, 2019. Brown requested a review of the ALJ's decision by the Appeals Council, which declined review on March 30, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Her original alleged disability onset date was February 24, 2017, but at the hearing Brown amended her alleged onset date to correspond with a previous unfavorable decision dated February 28, 2017. R. 160.

(the "Commissioner") as of March 30, 2020.

Brown's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 15. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[3]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

---

[3] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255

F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Brown bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

   (1) Is the claimant presently unable to engage in substantial gainful activity?
   (2) Are the claimant's impairments severe?
   (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

4

(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Brown was 39 years old on her alleged onset date. R. 73. Her primary complaints are lower back pain, incontinence, boils under her arms, depression, and vomiting and nausea due to migraines. R. 161–79. In her disability report, Brown alleged the following medical conditions: lower back issues from discs in her back, boils under her arms, depression, and migraines. R. 375.

Brown received her high school diploma and completed two years of college coursework. R. 166. Her past work experience includes employment as a cake decorator, cook, hairstylist, waitress, and baker. R. 166–67.

At the administrative hearing, Brown testified that her nerve pain had not changed since the previous hearing. R. 167. In February 2018, Brown underwent a lumbar discectomy, which released pressure in her back. R. 828, 167. She averages about two "good days" per week where she does not experience significant pain. R. 173. She spends most of her day in the bed because she cannot stand for more than 25 minutes, walk for more than five or six minutes, or sit for more than 45 minutes before experiencing pain in her back and legs. R. 182–83. She does not use a cane or brace. R. 179. Brown needs help completing household chores such as lifting a laundry basket, getting clothes out of the washing machine, and sweeping. R. 180. She can drive but does so rarely because it is painful. R. 183. Her pain medication makes her drowsy. R. 181. She testified that she falls asleep for four hours per day, will get up for about two hours, and then go back to sleep. R. 182. She experiences depressive symptoms but does not take the depression medicine prescribed by her regular family care doctor because it makes her sick. R. 177–78. She experiences migraines twice per week and her extended migraine episodes cause nausea. R. 173–76. She also testified that she experiences random occasions of incontinence. R. 167–69.

The ALJ issued his decision on February 25, 2019. R. 60. Under step one of the five-step evaluation process, he found that Brown has not engaged in substantial gainful activity since March 1, 2017. R. 65. The ALJ concluded that Brown suffers

from the severe impairments of degenerative disc disease of the lumbar spine, obesity, migraines, bilateral peroneal neuropathy, and hidradenitis suppurativa.[4] R. 66–68. The ALJ found that these medically determinable impairments cause more than minimal limitations to Brown's ability to perform basic work activities. R. 66. But the ALJ concluded at step three of the analysis that none of Brown's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 68.

Before proceeding to the fourth step, the ALJ determined that Brown had the residual functional capacity ("RFC") to perform a limited range of light work. R. 68. More specifically, the ALJ found that Brown had the following limitations with respect to light work as defined in 20 C.F.R. § 404.1567(b):

> she could change position at will from sitting, standing, or walking while remaining on task; occasionally climb stairs; never climb ladders; occasionally balance, stoop, kneel, crouch, and crawl; occasionally be exposed to extreme cold, extreme heat, humidity, wetness, and vibration; can tolerate up to a moderate noise level (example: office level noise); occasionally operate a motor vehicle; and can never be exposed to unprotected heights and moving mechanical parts.

R. 68. At steps four and five, the ALJ considered Brown's age, education, work experience, and RFC in determining that, although she is not able to perform any past relevant work, there are jobs that exist in significant numbers in the national

---

[4] The ALJ found Brown's alleged complaint of depression to be non-severe. R. 66–68. Brown does not challenge these findings.

economy that she can perform. R. 73. Based on the testimony of a vocational expert ("VE"), the ALJ determined the Brown could work as an office helper, information clerk, and cashier. R. 74. Accordingly, the ALJ determined that Brown was not disabled within the meaning of the Social Security Act from March 1, 2017 through the date of his decision. R. 74. Based on these findings, the ALJ denied Brown's application for benefits. R. 75.

## IV. DISCUSSION

Brown makes three arguments in favor of remand: (1) the ALJ did not properly evaluate her subjective symptoms of pain, (2) the ALJ's RFC finding is not supported by substantial evidence, and (3) the ALJ did not pose a complete and sufficient hypothetical to the VE including all of Brown's limitations and impairments. Doc. 17 at 2–17. The court addresses each argument in turn and finds that substantial evidence supports the ALJ's decision and the ALJ applied the proper standards to reach his conclusions.

**A.     Pain Standard**

Brown first argues that the ALJ improperly discredited her complaints of pain by "cherry-picking the medical records to offer findings to bolster his opinion" about her symptoms. Doc. 17 at 4. Brown contends that her subjective complaints of pain are voiced consistently throughout the record, and she highlights medical records from GMG NS Neurosurgery detailing treatment from Dr. Hrynkiw, a neurosurgeon,

along with medical records from Preferred Pain Associates. Doc. 17 at 4–10.

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including her history, medical signs and laboratory findings, and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(C)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required to

conduct an explicit symptom analysis, but the reasons for his findings must be clear enough that they are obvious to a reviewing court. *See Foote*, 67 F.3d at 1562. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Brown's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 69. This determination is supported by substantial evidence.

The ALJ thoroughly examined the medical evidence in determining that Brown's subjective complaints of pain were not entirely credible. R. 68–72. The ALJ specifically found that her complaints of disabling pain were inconsistent with the following medical evidence:

- Medical records in 2016 indicated that the claimant has a history of hidradenitis suppurtiva (R. 457), but subsequent medical records do not show significant treatment for hidradenitis suppurtiva and generally no significant rashes and lesions. R. 651, 658, 670, 834, 942.
- Treatment notes from April 2017 indicated a history of back pain, migraines, and neuropathy, and on examination there were complaints of tenderness in the lumbar spine area. R. 551. But treatment notes from West Alabama Spine and Pain specialist dated April 13, 2017 reflect that Brown had full strength in her upper and lower extremities, a nonlateralizing gait, intact cranial nerves, appropriate mood and affect, and no muscle atrophy or tenderness. R. 642. Additionally, treatment notes from June 2017 indicated that Brown had severe headaches about twice a month but her condition improved between headaches. R. 650. Treatment notes also indicated Brown had been doing worse after she stopped taking the medication Topamax. R. 650.

- Examination showed Brown was alert, had normal mentation, intact cranial nerves, normal movements, and intact sensory. R. 650.
- April 19, 2017 treatment notes referenced a lumbar spine MRI revealing mild disc abnormalities of L2–L3, L3–L4, and L4–L5 level without impingement and progression of central and right paracentral disc protrusion at L5–S1. R. 698. Radiological imaging conducted on June 17, 2017 showed mild discogenic degenerative changes and mild anterior osteophyte formation at L3–L4 and T12-L1, but satisfactory alignment of the lumbar spine, no fracture or subluxation, and intact pedicles. R. 681.
- Treatment notes from July 2017 reflect complaints of tenderness in the lumbar region and positive straight leg raises, but Brown had a normal gait, intact neurovascular examination, and normal upper and lower extremities. R. 663–87.
- By November 2017, subsequent MRIs and myelogram of the lumbar spine revealed that her spine protrusion was significantly diminished with mild-minimal mass effect on the nerve root and no nerve root displacement. R. 647, 751, 775, 806–09. Brown requested and received epidural injections in July 2017 and November 2017 for pain from caring for her elderly mother and lifting too much weight. R. 689, 693, 792–93.
- Treatment notes from January 23, 2018 detail complaints of incontinence and anesthesia on the left side. R. 800. However, Brown's pain was stable with medication, she had a normal gait and station, symmetric reflexes, no focal motor deficits, and was able to walk on her heels and toes. R. 800.
- Treatment notes following Brown's discectomy in February 2018 indicated that Brown was not in acute distress and ambulated normally. R. 828.
- Treatment notes from August 2018 indicated that Brown's pain was the same severity, but it was now intermittent instead of constant. R. 937–46. Brown reported that pain medications and epidural sacroiliac injections were 70% to 75% effective in managing her pain. R. 943. She also reported that her activities of daily living increased with medication and her medications did not result in any driving impairment. R. 941.

In addition, the ALJ considered the medical opinions and prior administrative medical findings in the record, including Dr. Fawad Aryanoure's and Dr. Mark Prohaska's consultive examinations. R. 71. The ALJ noted that Brown complained to Dr. Aryanoure of migraines, headaches, lower back pain radiating down both legs,

11

depressed mood, and swelling in the right foot and ankle, but she also had a normal gait, full strength in her musculoskeletal system, and full range of motion. R. 71, 656–59. As to Dr. Prohaska's opinion, the ALJ noted that he observed no significant mental limitations and found that this opinion was consistent with the record. R. 71, 724–25.

Based on this medical evidence and Brown's testimony about her daily activities, the court finds that the ALJ's assessment of Brown's pain testimony is supported by substantial evidence. Brown's medical records detailed complaints of pain, but her medical examinations were largely normal with moderate clinical findings relating to her lumbar spine, and there was evidence of improvement with medication and treatment. *See Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). The record reflects that Brown's treatment and medication were effective since, for example, her constant pain became intermittent and she reported 70 to 75 percent relief. R. 943. Additionally, Brown's own testimony shows that she can perform daily activities such as cooking, laundry, grocery shopping, and sweeping with help. R. 180, 183. The record also reflects that Brown can groom herself, occasionally drive, manage funds, and

provide care for her children. R. 724.  These activities further undercut her claim of disabling limitations.

In sum, the ALJ correctly considered "the consistency of [Brown's] statements" with the remainder of the evidence and properly evaluated her subjective complaints. *See* SSR 16-3p, 2017 WL 5180304, at *8.  The ALJ's determinations are supported by substantial evidence.

**B.     RFC Formulation**

Brown next argues that the ALJ's RFC finding is not supported by substantial evidence. Doc. 17 at 10.  Specifically, she contends that the ALJ did not link the RFC assessment to the entirety of the medical records in the file. Doc. 17 at 10.  The Commissioner contends that this argument lacks merit and is an invitation to reweigh the evidence rather than defer to the ALJ's decision. Doc. 18 at 19.  The court agrees.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 regulates the ALJ's assessment of a claimant's RFC.  Under SSR 96–8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p at 1.  The regulation mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describ[ing] the maximum amount

of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p at 6.

The Eleventh Circuit has held that an ALJ meets the requirements of SSR 96–8p by considering all of the evidence even when the ALJ could have been "more specific and explicit" in his or her findings with respect to a plaintiff's "functional limitations and work-related abilities on a function-by-function basis." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (holding that an ALJ's RFC finding is sufficiently detailed—despite lacking an express discussion of every function—if there is substantial evidence supporting it). In addition, the ALJ need not "specifically refer to every piece of evidence in his decision" so long as the decision allows the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211.

Consistent with the standards, the court is satisfied that the ALJ considered the entirety of the medical evidence in formulating Brown's RFC assessment. The ALJ's decisions includes a thorough discussion and examination of the evidence of Brown's impairments, including the objective medical evidence, subjective symptoms, and the extent to which those symptoms are reasonably consistent with the objective medical evidence, prior administrative medical findings or medical opinions, her daily activities, and testimony concerning her limitations. R. 68–72.

The ALJ also explained the basis for his determination that Brown could perform a reduced range of light work. R. 72. Brown's argument that the ALJ must include limitations specific to each medically determinable impairment is without merit since the ALJ need not refer to every piece of evidence in determining a claimant's RFC. *See Dyer*, 395 F.3d at 1211. The ALJ's RFC assessment is supported by substantial evidence. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

C.  **VE Hypothetical**

Brown's final argument is that the VE's testimony is not supported by substantial evidence because it was based on an incomplete and insufficient hypothetical. Doc. 17 at 14–16. Specifically, Brown contends that the ALJ's hypothetical did not include specific limitations associated with bilateral peroneal neuropathy. Doc. 17 at 16.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2004). Furthermore, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363

F.3d 1155, 1161 (11th Cir. 2004).

The court finds that the ALJ's hypothetical questions to the VE appropriately accounted for Brown's impairments and limitations as demonstrated by the medical evidence of the record. This is all that is required of the ALJ. *See McSwain v. Bowen*, 814 F.2d 617, 619–20 (11th Cir. 1987); *see also Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 883 (11th Cir. 2019) ("[B]ecause Borges's RFC, which is supported by substantial evidence . . . matched the ALJ's first hypothetical question at the hearing he did not need to rely on these more restrictive hypotheticals."). Brown argues that the ALJ's hypotheticals omit specific functional limitations associated with bilateral peroneal neuropathy such as the operation of foot controls and limits on walking and standing. Doc. 17 at 16. The ALJ's hypothetical, however, incorporated a light exertional level consistent with his RFC determination. The court has concluded that substantial evidence supports the ALJ's assessment of her subjective complaints of pain resulting from her impairments, including bilateral peroneal neuropathy, and the ALJ's hypothetical conformed with the impairments he found to be supported by the record. The court, therefore, concludes that the hypothetical was not incomplete or insufficient.

## V. CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of

the Commissioner is due to be affirmed.

A final judgment will be entered.

DONE and ORDERED on September 15, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE